H. H. PATTEN, *et al.*, v. CHARLES FLORENCE, *as County Clerk, et al.*

1. ELECTION — *All Poll-Books to be Canvassed.* It is the duty of the county clerk and board of county commissioners, when convened to determine the result of an election, to canvass all the poll-books of such election returned to the office of the county clerk.

2. ELECTION RETURNS — *Duty of County Board.* It is the duty of the clerk and county commissioners to satisfy themselves that the poll-books returned are genuine, and when the only irregularity in returning them is, that they were brought to the clerk's office in a sealed envelope with the ballots cast at the election, which was indorsed as containing all the ballots cast, they ought to receive other evidence than such indorsement that the poll-books are in the envelope, and should open it, take out the poll-books, and canvass the returns as shown by them.

*Original Proceedings in Mandamus.*

AT the general election of November 8, 1887, the plaintiff, *H. H. Patten*, was a candidate for treasurer of Kiowa county, Kansas, and the plaintiff, *W. L. McCord*, was a candidate for county clerk of said county. At that election Addison Watson

was the opposing candidate for treasurer, and J. H. Morrison for county clerk of said county. The defendants, *C. P. Fullington* and *J. A. Shepherd,* were county commissioners, and *Charles Florence* was county clerk. They met as a canvassing board on the 11th of November, 1887, to canvass the votes cast at said election, and canvassed the votes cast in eight of the ten municipal townships in said county, but neglected and refused to canvass the votes cast in Reeder and Lincoln, the other two townships. The canvass of the votes of the eight townships showed that H. H. Patten received 707 votes for county treasurer, and A. Watson 652; and for county clerk, McCord received 678 votes, and J. H. Morrison 686 votes; the commissioners declared Patten elected county treasurer, and Morrison county clerk. The vote of the two townships of Reeder and Lincoln would not have changed the result for treasurer, only to increase the majority for Patten; if the votes of these townships had been canvassed, McCord would have received in the aggregate in the county 745, and J. H. Morrison 730 votes, thus reversing, so far as the office of county clerk was concerned, the result as determined by the county commissioners.

The county clerk and the two county commissioners gave as their reason for not canvassing the votes of Reeder and Lincoln townships, that they did not have before them proper and sufficient returns of the election held in those townships. Upon the day following the general election, the proper officers of the respective townships of Reeder and Lincoln brought in the returns of their townships, the poll-books and the ballots, inclosed in a single package, and upon the back of each package was an indorsement showing that it inclosed all the ballots received at the election held in the respective townships. It was established that the county clerk and both of the county commissioners had actual knowledge that these packages inclosed the poll-books of the respective townships, as well as all the ballots received at the election.

It is further claimed that McCord was not at the time of the election an elector of Kiowa county, and testimony was

offered which developed about this state of facts: McCord first came to Kiowa county in the autumn of 1884, and remained there until the 19th day of May, 1887; then he, with his wife and child, being all the family he had, went to Arkansas, returning on the 18th day of June following, and has ever since resided in the county. His household goods remained at his residence on his farm in Kiowa county. He had sold his cattle and mules before leaving for Arkansas. There was some testimony tending to show that he said he left Kiowa to make his home in Arkansas, with his wife's father; he denied it, and stated that he simply went there on a visit, with no intention of abandoning his residence in Kansas.

Plaintiffs brought this action to compel the board to canvass the votes cast. J. A. Shepherd, in obedience to the alternative writ of mandamus, appeared on the 17th day of December, 1887, at Greensburg, the county seat of Kiowa county, at the office of the county clerk, to canvass the votes cast at the general election in the two townships in question, but the county clerk and Fullington, the other county commissioner, failed to appear, and no canvass was made.

The opinion herein was filed at the session of the court in February, 1888.

*H. H. Patten,* and *S. L. Bullard,* for plaintiffs.

*Geo. P. Rush,* and *Johnson, Martin & Keeler,* for defendants.

Opinion by HOLT, C.: It is urged that the county clerk is not a member of the board of canvassers, and for that reason the writ prayed for should not issue against him; it is also contended that because the election returns were not placed before the county commissioners by the county clerk, they have never had an opportunity to canvass them, and therefore have never refused or neglected to perform their duty required of them by law. Neither of these claims is tenable. The county clerk has his duty plainly prescribed by law, and he cannot evade it by stating that he is not one of the board of canvassers, nor can the county commissioners excuse themselves

from the discharge of the functions of their office, by showing that the county clerk did not first take from his files and open and bring the returns before them.   Our statute provides that the county clerk *and* the commissioners of the county shall meet at the office of the county clerk, and shall proceed to open the several returns which shall have been made to that office.   The county clerk and the county commissioners knew, as a matter of fact, that the poll-books of both Reeder and Lincoln townships were in the county clerk's office; there was no question of their accuracy; no doubt of their authenticity. They were put under cover, sealed and properly brought there, except they were inclosed in an envelope or package with the ballots; this was the irregularity — "only this, and nothing more."   The defendants say, however, that they had no competent evidence to show that the poll-books were inclosed in such packages, as they were indorsed simply as containing all the ballots cast at the election in the respective townships whence they came; and contend that they were not authorized to hear oral evidence, receive affidavits, or otherwise assume judicial powers to determine the contents of said packages Of course the members of the board of canvassers are ministerial officers, with limited powers, but then they may satisfy themselves whether the returns in the office of the clerk are genuine or not, and can do so by evidence other than the indorsements upon the sealed packages before them.   In this instance, a part of the judges of election of Lincoln and Reeder townships were before them, and they were certainly competent to testify that the packages indorsed as containing the ballots, contained the poll-books also; they could have opened the packages and found the poll-books at once.   But the defendants say that they were forbidden by § 8, chap. 36, Compiled Laws of 1879, to open the envelopes containing the ballots.   The portion of said section to which they refer is as follows:

"The ballots, after being counted, shall be sealed up in a package and be delivered to the county clerk, who shall deposit them in his office, where they shall be safely kept for

twelve months, and the county clerk shall not allow the same to be inspected, unless in case of contested elections, or unless the same become necessary to be used in evidence, and then only on the order of the proper court."

The good faith of the contention of the defendant, Florence, would be more apparent to this court if his objections had been made as suggestions to the officers bringing the envelopes to him at that time, instead of waiting until the day for canvassing the vote.

The defendants claim to be very particular in the observance of the strict letter of § 8, even at the expense of losing sight of the real object and purpose of the election law. They seemed to be solicitous and tenacious of the technical exactions of the statute, but easily and readily omitted the weightier matters of the law. It appears almost unnecessary to call attention to the oft-repeated and well-known truth, that it is of the utmost importance that all votes cast shall be honestly counted, and the result determined from all the returns. It is the object and aim of all the provisions concerning the returning and canvassing the poll-books, tally-sheets and ballots, to determine who has received the highest number of votes cast. Section 29 provides:

.   .   .   "Whenever it shall satisfactorily appear that any person has received the highest number of votes for any office, such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may not be defeated by any informality of any officer."

It seems to us like trifling with the provisions of this section to interpose the defendants' construction of § 8, in order to declare one elected |who did not apparently receive the highest number of votes. We are pleased to know and gratified to declare that the law has a broader and fairer construction than that given it by the defendants. If it were possible to give it the narrow interpretation contended for, we should be constrained to say that the law should be "not of the letter, but of the spirit; for the letter killeth, but the spirit giveth life."

But does section 8, fairly construed, prevent, in a case like the one we are now considering, the opening of the envelopes containing the ballots, sealed and sent to the county clerk by the judges of election ?   It provides merely that they shall be safely kept, not with unbroken seals necessarily, but kept so that their identity may be proven easily. (*Dorey v. Lynn,* 31 Kas. 758.)   It further provides that the county clerk shall not allow them to be inspected.   We do not think there would have been an inspection of the ballots as contemplated by law —a careful and critical examination that would have detected anything wrong with them, if any wrong existed — by merely opening the envelopes, taking therefrom the poll-books, and again sealing the ballots in the same envelope openly, in the light of day, in the presence of all the members of the board and the judges of the townships in question, and other citizens who were standing by.   We do not care to pursue this matter further.   The county clerk and county commissioners refused to perform their plain duty.

We believe the plaintiff McCord was an elector of Kiowa county, at the date of the election, his residence dating from the autumn of 1884.   We would recommend that a peremptory writ of mandamus be awarded, at the cost of defendants Florence and Fullington.

By the Court: It is so ordered.

All the Justices concurring.